**1813.          CLARK'S EXECUTORS *v.* CARRINGTON.**

Fel    6th

---

*Absent....*JOHNSON, J. *and* TODD, J.

In a case of warranty and indemnity, a judgment against the person to be indemnified, if lawfully obtained, especially if obtained on notice to the warrantor, is admissible evidence in a suit against him on his contract of indemnity.

A person who upon receiving an assignment of a share of property as security for a debt, agrees to comply with the contract of the assignor with a joint owner of the property, is bound to fulfil that contract although it exceed in amount the value of the share of the property transferred to him.

ERROR to the Circuit Court for the district of Rhode-Island, in an action of *assumpsit*, brought by Carrington against Clark, in his life time, and prosecuted against his executors, after his decease, to recover from them *five ninths* of the amount of a judgment recovered by Smith and Co. of Hamburgh, against Carrington upon a claim against him jointly with Greene and Barker, and J. C. Nightingale; Carrington having paid *the whole*.

The declaration contained the usual money counts, and several counts upon a special undertaking by Clark to comply with the contract between Greene and Barker and Carrington, which contract was averred to be to pay all debts contracted by Carrington with Smith and Co. on account of the owners of the ship *Abigail*, in the proportion in which they are interested therein; the owners being Greene and Barker for five ninths. J. C. Nightingale for two and an half ninths, and Carrington for one and an half ninths; Clark having received from Greene and Barker, who had become insolvent, an assignment of their share in the ship and cargo; and Carrington having paid over to Clark, five ninths of the proceeds thereof.

A bill of exceptions was taken to the opinion of the Court below, and to the admission in evidence of a letter from Clark to Smith and Co. of the 30th of June, 1800—and of a letter from Greene and Barker, to Smith and Co. of the 12th of July, 1800—and of the writ, proceedings and judgment, in the suit of Smith and Co. against Greene and Barker, J. C. Nightingale and Carrington.

The letter of 30th June, 1800, from Clark to Smith and Co. says, "This will be handed to you by Mr. Ed-"ward Carrington, who goes supercargo of the ship "*Abigail*, of which he is a part owner in company with "Messrs. Greene and Barker and John C. Nightingale.

" They have concluded to send their ship on freight to CLARK'S
" your city, where having no correspondent, I do myself EX'RS.
" the pleasure of recommending them to your notice.    v.
" Mr. Carrington proposes continuing in the ship, and CARRING-
" it is probable will require your advice and assistance TON.
" in the voyage which he intends carrying into execu-
" tion. I have ever found these gentlemen persons of
" strict integrity, and I doubt not will punctually fulfil
" any engagements they may enter into with you."

The letter of the 12th of July, 1800, from Greene and
Barker to Smith and Co. is as follows:

" *New York,* 12th July, 1800.

" Messrs. George Smith and Co.

" Gentlemen—By the recommendation of our mutual
" friend, Mr. John Innes Clark, of Providence, we are
" induced to make an acquaintance with your house,
" and we have accordingly recommended Mr. Edward
" Carrington, supercargo of the ship Abigail, (of which
" he, together with Mr. John C. Nightingale and our-
" selves are owners) to call on you for the necessary
" aid he may require while in your city. We have
" opened our plans of a voyage for the Abigail to your
" Mr. Adamson, which he doubts not you will readily
" coincide with, and render Mr. Carrington the neces-
" sary aid he may require. We shall consider our-
" selves responsible for all contracts which Mr. Car-
" rington may make in the business of this ship, and an-
" ticipate the pleasure of your being well satisfied with
" his strict fulfilment of them. We have handed your
" Mr. Adamson bills of lading for a parcel of dye-wood,
" shipped in the Abigail with an order to get one thou-
" sand pounds sterling insured on her cargo and freight,
" and shall draw on you in consequence for seven hun-
" dred and fifty pounds sterling.

" We are, your most obedient servants,
" GREENE & BARKER.

" Please effect the above insurance, if not already done.
" WM. ADAMSON."

CLARK'S EX'RS. *v.* CARRINGTON.

The record of the proceedings in the suit of Smith and Co. *v.* Carrington and others, was objected to because Clark was not a party to it. But it was proved that Clark had a power of attorney from Carrington, who was in Canton, and conducted the defence of that suit in his behalf.

The evidence principally relied on by the Plaintiff in support of his action was a letter from Clark to him of the 16th of March, 1801, written at *Providence.* That part of the letter which relates to the object is as follows :

"Mr. Edward Carrington,

" DEAR SIR,

" Since your departure from hence, our friends Messrs. " Greene & Barker, have been so unfortunate as to reduce " them to the necessity of compromising with their credi- " tors. In order to secure me for the indorsements I have " made in their behalf, they have conveyed to me two " thirds of the ship Abigail, with her appurtenances " also five sixths of two thirds of the cargo. Situated " as this business is, I have to recommend your mak- " ing the utmost dispatch in your sales and proceeding " immediately for this place, with such articles as you " shall receive in return for the sales of your outward " cargo, submitting the articles entirely to your judg- " ment; but I recommend that you leave no part of the " property behind you, if it can possibly be avoided. " With respect to the ship, notwithstanding I have a " bill of sale from Greene and Barker of two thirds, I " shall view you (if you return here with her) as the " owner of such proportion as agreed upon between " you and them, and I give you my word that you shall " receive from me every aid and support in settling the " business to mutual satisfaction, that is in my power. " Mr. John Corlis, who has undertaken to conduct the " business for Mr. John C. Nightingale, writes you by " this opportunity, and will assure you in his behalf of " one-sixth of one-third from him—that is to say, to " make you an owner in the whole ship Abigail and " appurtenances of one complete sixth, and the same " proportion in the cargo, and Greene and Barker's " contract with you, shall in every respect be fully com-

" plied with, the same as it would have been done with
" them, had they continued owners."

The answer of Carrington to this letter was as follows:

CLARK'S
EX'RS.
*v.*
CARRING-
TON.

" *Havanna,* April 22d, 1801.

" John Innes Clark, Esq.

" SIR,

" Triplicate your letter of 16th of March, was handed
me this day, original and duplicate having not appear-
ed.   Your letter gives me the first advice of our friends
Messrs. Greene and Barkers misfortunes by the fire,
and am very sorry that they have been obliged to dis-
pose of the Abigail and her cargo under their present
situation of a bottomry to Messrs. Geo. Smith and
Co. at Hamburg.  But I presume and doubt not Messrs.
Greene and Barker have acquainted you with the *exact
situation of them,* and have only disposed to you of that
part of the ship and cargo that may remain after the
bottomry bond is settled and discharged.

" In consequence of the capture and detention of part
of the cargo and bad condition of the ship, I have been
unable to return direct to Hamburg, and obliged to
make up a voyage for Providence, and have advised
Messrs. Greene and Barker with particulars and desired
them to cause insurance to be made thereon.  I shall
leave here this day and join the ship and hope to be at
sea in a day or two.  Should the voyage meet no other
further disappointment, I flatter myself that after set-
tling the accounts of the adventure, it will turn to some
advantage and leave a considerable balance due Messrs.
G. and B. and beg to assure you that every thing that
is consistent and within my duty in this business I shall
give the strictest attention and consult you therein.

I am, with esteem and respect,

Your obedient servant,

EDW. CARRINGTON."

Carrington, while at Hamburg in order to procure
a cargo for the ship, had obtained credit with Smith

CLARK'S
EX'RS.
*v.*
CARRING-
TON.

and Co. to a large amount upon the hypothecation of the ship by a bottomry bond, and upon agreeing to return to Hamburg with a cargo; for which purpose he engaged Smith and Co. to procure insurance to be made in a large sum upon his return voyage. The premium on this insurance constituted a considerable part of the debt due to Smith and Co. upon which they recovered judgment against Carrington as before stated. One of the grounds of defence taken by Clark's executors, was that Carrington had neglected to give notice to Smith and Co. of the dereliction of the return voyage in due time to save that premium of insurance, and therefore he alone ought to suffer by it. The Judge, in the Court below, in charging the jury, (as the manner is in Rhode-Island,) said " Great blame is attempted to be thrown " on Mr. Carrington for not giving notice to George " Smith and Co. that he had changed his voyage so as " to prevent the insurance being made from Havanna " to Hamburg; and the Defendants say that for his " neglect in not giving such timely notice, he ought " alone to pay the whole of that premium—*of this you* " *will judge.*" The judge also said, " I conceive the " case to be clear, that as Greene and Barker were in- " terested five ninths in the voyage, they were bound to " indemnify Mr. Carrington in the same proportion for " the damage he should sustain by the contract with " George Smith and Co." And again he says, " If " Mr. Clark received from Mr. Carrington more than " five ninths of the surplus after paying the company's " debts, and Mr. Carrington has since been obliged to " pay those debts, Mr. Clark is bound to refund his " proportion."

The Judge finally concludes his charge in this manner,

" Having gone through the case at great length and " conceiving it on the whole to rest principally on ques- " tions of law, I will give you my opinion explicitly up- " on them, so that if your verdict should be against the " Defendants, they may have an orportunity to bring " the cause before the Supreme Court.

" I conceive that Mr. Clark's letter bearing date " March 16, 1801, at Providence, and directed to Mr. " Carrington, at Havanna, and received by him 22d of

"April, 1801, *taken in connection with the other evidence* CLARK'S
"*in the case,* ought to be condsidered as a letter of guar- EX'RS.
"anty, and binding Mr. Clark to pay five ninth parts *v.*
"of the debt due to George Smith and Co. as ascertain- CARRING-
"ed by the judgment in their favor against Mr. Car- TON.
"rington.

"I am also of opinion that Mr. Clark having receiv-
"ed of Mr. Carrington, a large sum of money, under
"and by virtue of the assignment, from Greene and
"Barker, of their interest in the ship Abigail and car-
"go, was bound, *under the circumstances of this case, as*
"*made out and established by the evidence,* to refund the
"same or so much thereof, as would amount to five
"ninth parts of the debt due to George Smith and Co.
"What sum Mr. Clark received, is a question of fact
"proper for you to decide."

The verdict and judgment being against the Defen-
dants, they sued out their writ of error.

C. LEE, *for Plaintiffs in error.*

The bill of exceptions is,

1. To the admission of improper evidence, and

2. To the judge's opinion as to the effect of that evi-
dence.

1. As to the admission of improper evidence. The
letter of the 30th of June was irrelevant and could have
no effect upon the present case. The letter of 12th of
July, 1800, from Greene and Barker to George Smith &
Co. was improper evidence in the case, because it was
between other parties. Clark had no knowledge of
such a letter when he agreed to comply with the con-
tract of Greene and Barker with Carrington. The re-
cord of proceedings in the case of Smith and others *v.*
Carrington was inadmissible because Clark was not
party or privy to that cause.

2. As to the opinion of the judge upon the effect of
the evidence.

CLARK'S
EX'RS.
v.
CARRING-
TON.

The letter of 16th of March, 1801, did not bind Clark to pay any money to George Smith & Co. It was intended only to bind Clark to permit Carrington to have one sixth of the ship and cargo according to the contract between him and Greene and Barker. The engagement of Clark was also upon a condition precedent, viz. that Carrington should return with the ship to Providence: which condition he never performed. It was very important to Clark to get possession of the ship, and he therefore annexed the condition to his promise, that the ship should be brought to his place of residence. There is no evidence that Clark knew of any other contract between Greene and Barker and Carrington than the agreement that he should have one sixth of the ship. The judge ought not to have left it to the jury to decide whether the conduct of Carrington, in not bringing the vessel to Providence, was satisfactory to Clark, as a compliance with the condition of his promise; but ought to have told the jury that the condition had not been performed, and therefore Clark was not bound by his promise.

The judge also erred in directing the jury that the letter of the 16th of March ought to be considered as a letter of guarranty, and binding Clark to pay five ninth parts of the judgment recovered by Smith & Co. v. Carrington. That judgment may include items for which Greene and Barker were not liable to reimburse Carrington. He erred also in directing the jury that the special counts were supported by the evidence, and that the Plaintiff might, upon the money counts recover less than the proportion of the judgment of Smith & Co.

Carrington had no *equitable* claim on Clark. Clark was not liable at all unless he was bound by the letter of 16th March. As to the premium of insurance upon the return voyage from Havanna to Hamburg, which constituted a great part of the claim of Smith & Co. against Carrington upon which their judgment was founded, it was an expense which arose solely from the neglect of Carrington to give due notice to Smith & Co. of his relinquishment of the return voyage, and therefore Carrington could not have recovered any part of it from Greene and Barker; and the judge ought to have instructed the jury accordingly.

Clark was a creditor of Greene and Barker, and had as much equity as any other creditor. He took the bill of sale without notice of any prior equity. Clark, by accepting the bill of sale, could not be considered as a partner, nor liable for any transactions prior to his interest in the ship and cargo. If Greene and Barker had never paid for the ship and had become insolvent, Clark could not have been held liable to the vendor. There was no lien on the vessel or cargo. An assignee is not a partner. There is no partnership without an agreement. 1 *H. Bl.* 37, 48. *Watson on Part.* 21, 67, 3 *Bos. and Pul.* 288, *Parker v. Parker.* 289, *Chapman v. Cross.*

*margin: CLARK'S EX'RS. v. CARRINGTON.*

STOCKTON, *contra.*

Upon every principle of law and justice this judgment ought to be affirmed. The suit was by one joint owner to recover of another joint owner a proportion of a joint debt recovered against the Plaintiff. The verdict of the jury has settled all the questions of fact. There is no error in the *form* of the charge given by the judge to the jury.

1. As to the points of law arising in the case. The charge given by the judge to the jury regards two subjects: 1. That the letter of the 16th of March was, in connexion with the other evidence, a guarranty for five ninths of the debt due to Smith & Co. And, 2. That Clark, having received upon his five ninths of the ship and cargo, more than his proportion, ought to refund.

1. As to the letter of 16th of March. It clearly binds Clark to do, in regard to that ship and cargo, and to the adventure, whatever Greene and Barker would have been bound to perform had they continued owners. There cannot be a doubt that Greene and Barker, as joint owners with Carrington, would have been bound to reimburse to Carrington five ninths of the debt due to Smith & Co. which Carrington had been compelled to pay. It is clear also that Clark understood his liability as going to that extent. This is to be inferred from his silence as to the letter of the 22d of April, 1801, which Carrington wrote to him in reply to his of the 16th of March; from the sanction which Clark gave to the subsequent voyage to London by his

CLARK'S
EX'RS.
*v.*
CARRING-
TON

letter of 15th of May, 1802; from his having charged himself in account with five ninths of the out-fit for that voyage; from his having joined in another adventure as to part of the cargo left at Guadalope; from his letter of the 9th of July, 1801; from his having conducted the defence of the suit of Smith & Co. against Carrington; from his affidavit made to obtain a continuance of that suit; and finally, by agreeing to refer this cause to arbitrators to ascertain the amount for which the judgment should be rendered, thereby admitting a good cause of action against him.

If all the part owners are not named in a suit, and if those who are named do not plead that fact in abatement, and judgement be obtained against them, they may compel the others to contribute. *Abbot,* 71, § 13, *first London edition.* 2 *Bos. and Pul.* 268, 270. 1 *East.* 30.

But Clark was liable *as a joint owner,* independent of the express undertaking contained in his letter of the 16th of March. And even if he is to be considered as the mere assignee of Greene and Barker, he must stand in their place and take their interest *cum onere.* No person claiming under a partner, or joint owner, can claim more than such partner or joint owner could have claimed, if he had not assigned his interest. *Cowper,* 449, *Fox v. Hanbury.*

2. The second opinion of the judge was, that if Clark had received the proceeds of five ninths of the ship and cargo, he was bound to refund five ninths of the debt which Carrington had paid to Smith & Co. and that Carrington had a right to recover the same in this suit upon the money counts. In this opinion also he was correct.

If a person has received money, which by subsequent events he ought in equity and justice to refund, it is money had and received for the use of the Plaintiff. He might also in this case recover on the count for money paid, laid out and expended for the use of the Defendant. He paid the whole of the joint debt o which the Defendants ought to have paid five ninths.

The Plaintiff was also entitled to recover on the special count. The only question, on the point of plead-

ing, is whether the contract in the letter be materially
variant from the count. The only variance alleged is
in regard to the bringing of the ship to Providence; but
the count is as general as the letter. The only question
then is whether the return of the vessel to Providence
was a condition precedent of the contract contained in
the letter. The word " here" is satisfied if the vessel
came into the United States. This was a question pro-
perly submitted to the jury. Could it mean that the
Plaintiff was bound at his peril and at all events, to
bring the vessel into Providence? Shall nothing excuse
him? Capture? nor tempest? nor the clear interest of
the concern?

As a partner, and especially as husband of the ship,
he had a discretion to act for the common benefit of all
concerned. *Abbot,* 58, 59. The condition was substan-
tially performed. If not, it was dispensed with by
Clark. Time and place are not of the essence of the
contract. If a horse be sold to be delivered at a certain
place on a certain day, and the purchaser, before the
day, receive the horse at another place, the contract is
fulfilled. Clark made no objection to the delivery of
the ship at Norfolk, but agreed to a new voyage from
thence to London, and received the proceeds of that voy-
age without objection. He is bound by his acquiescence.

Then as to the admission of evidence.

1. It is objected that the record of the case of Smith
and Co. *v.* Carrington, ought not to have been admit-
ted in evidence, because it was *res inter alios acta.*

This objection admits of three answers.

1. It does not apply to this case because Clark, al-
though not an ostensible party, was a party in interest.
Where the parties are substantially the same, the re-
cord is evidence.—*Gill.* 35, *Doug.* 517, *Kinnersly v. Small.*
4. *Dall.* 120.

2. The 2d answer is that this is either a case of in-
demnity or warranty; and there is a privity between
the person indemnified and the person indemnifying.
The root of the principle is found in the common law
doctrine of warranty. If the party were called to war-

*Margin note:* CLARK'S EX'RS. *v.* CARRINGTON.

rant, the judgment was conclusive against him; and when the writ of *warrantia chartæ* yielded to covenant the same principle applied.—4, *Reeves,* 167. Where a person indemnified gives notice, to the person indemnifying, that a suit is brought against him, the judgment is conclusive against the latter in a suit by the former against him for indemnity.—3, *I. R.* 374, *Duffield v. Scott.* 1. *Johnson,* 517, *Blandsdell v. Glasscock.* So in an action of covenant on sale of land, the Plaintiff must show an eviction, which he can only do by the record of the suit against him.—6, *Johnson,* 158.

The principle of *res inter alios acta* never applies to a case of indemnity. Clark not only had notice, but actually defended the suit.

3. The 3d answer is that a judgment ascertaining a precise fact, character, or privilege is always evidence, whenever that fact, character or privilege comes in question between other parties.—2, *Strange* 1109.—5, *Bu . 2601.*—1, *Bur.* 146, 9, *Mod.* 66.

It is objected also that the letter from Clark to Smith and Co. of 30th of June, 1800, was irrelevant and therefore ought not to have been read in evidence. But it clearly refers to the subject-matter. It is also said that the letter from Greene & Barker to Smith & Co. was a letter between others, and ought not to have been admitted as evidence against Clark. But it was a letter from those under whom Clark claims, and by whose acts he is bound, so far as those acts relate to the property assigned to him. It was also evidence of the engagements of Greene and Barker, which Clark had undertaken to perform.

But it is said that Carrington ought not to recover, because the loss of the premium upon the insurance was owing to his negligence in not giving earlier notice of the alteration of the voyage.—The answer is, that this was a matter left to the jury and properly in issue between the parties. There is no evidence of negligence in the record.

HUNTER, *on the same side.*

The letter of the 16th of March was in itself a guar-

ranty. And all the acts of Clark show that such was his understanding of it.

The judgment of Smith and Co. *v.* Carrington was admitted only as evidence of the amount recovered. All the cases on this subject are collected in the *American edition of Peak's Law of Evidence, p.* 45, 47.

As to the count for money had and received.—This was money paid by mistake, in supposing that the debt claimed by Smith and Co. could not be recovered. Or it was a case of trust, Clark having received the money upon the understanding that he would pay his proportion of whatever Smith and Co. might recover.

The premium of insurance was paid by Smith and Co. before it was possible that they could have received notice of the change of the voyage.

If Carrington was an agent, his acts have been sanctioned by Clark, If he was guilty of misconduct, Clark has waved it.

The agent is discharged if the principal adopt his acts. 1, *N. Y. T. R.* 323; *Lyle v. Clason.*—1. *N. Y. T. R.* 526, *Codwise v. Hacker.*—*Johnson's cases in error* 110, *Towle v. Stephenson.*

JONES, *in reply.*

The real question is whether Clark made himself liable for the debts of his debtors, Greene and Barker. The whole expedition resulted in loss. It is not probable that Clark meant to take all the risks of the voyages which Carrington might have undertaken under his agreement with Greene and Barker. In order to make Clark a partner the evidence must be very clear. But here was no account of stock taken—no ascertainment of debts, &c. all of which precautions would be taken by a prudent man before he engaged in a co-partnership. Clark was merely an assignee of the *property,* and the account rendered, shows that he took Greene and Barkers share at a certain price. Clark could not be liable for any losses which happened before the assignment. He was never considered as a partner ei-

CLARK'S
EX'RS.
*v.*
CARRING-
TON.

ther by himself or by any of the other parties. He was only considered as an assignee for his own security. Carrington gave up the property to Clark without any engagement on his part to pay the debts of the concern; shewing thereby his construction of the nature of the assignment to Clark. There is no evidence to support the counts for money had and received, and for money paid, laid out and expended. Nor did the evidence support the special counts. They do not state the condition that the property was to be delivered at Providence, nor do they aver a delivery any where.

The record in the case of Smith and Co. *v.* Carrington, was admitted in evidence without any preparatory evidence to shew its connexion with this case. The declaration was general and extensive. The account filed did not show the cause of action.

Community of interest does not authorize the admission of a record in evidence. There must be either privity of estate or of title. Clark did not claim either under Carrington or Smith and Co.

All the cases of warranty cited apply to land or specific property, where the title to the thing was in question. They are exceptions to the general rule. The case in 3, *T. R.* is a case of indemnity against actions, and came on upon demurrer. But if it had come on before the jury, the Plaintiff must have shewn that it was a suit for a debt against which he was to be indemnified, 1, *Esp. Rep.* 162.

The other cases cited are of *public* rights—such as *common, prescription, custom,* &c.

*February 13th....*MARSHALL, *Ch. J.* delivered the opinion of the Court as follows :

This cause comes on now to be heard,

1st. On exceptions to the opinion of the Circuit Court permitting certain exhibits produced by the Defendants in error, to go to the jury.

2d. On exceptions to the charge delivered by the Judge, to the jury.

The first exhibit, to which the Plaintiffs in error objected, was a letter written by their testator to George Smith & Co. of Hamburg, which respects the transaction on which the present suit is founded. This letter is said to be irrelevant.

The second is a letter written by Greene & Barker, [whose interest, the testator of the Plaintiffs held as assignee] to George Smith & Co. making themselves responsible for the contract of Carrington.

This letter is said to be inadmissible, because it is between other parties, and relates to a contract between Carrington and George Smith & Co,

The third is a judgment obtained by George Smith & Co. against Edward Carrington, the Defendant in error, on his transactions as a co-partner with Greene & Barker, which were guarantied by them. The objection to this exhibit, also is, that it is the record of proceedings in a suit between other parties.

The Court is unanimous and clear in the opinion, that neither of these exceptions is sustained.

The letter of John J. Clarke to George Smith & Co. is admissible, because it is part of the correspondence relative to the transactions out of which the present suit has grown, and because it affords a strong implication that the writer was acquainted with the obligation of Greene & Barker, whose interest he claims, to comply with the engagements of Carrington, their co-partner and supercargo. It cannot, therefore, be deemed irrelevant.

The letter of Greene & Barker to George Smith & Co. is admissible, because it tends to show the obligation of Greene & Barker, (whose interest in the Abigail and her cargo, is claimed by John Innes Clarke,) to perform the engagements of Carrington, and is a proper link in that chain of testimony which was adduced to prove that those engagements passed, with the interest of Greene & Barker in the Abigail and her cargo, to John Innes Clarke.

CLARK'S
EX'RS.
*v.*
CARRING-
TON.

The judgment obtained by George Smith & Co. was admissible, because it was founded on the contracts of Carrington with George Smith & Co. for which Greene & Barker were liable. It was a material document to ascertain the amount to which George Smith & Co. were entitled, as against Carrington, and was therefore a part of the testimony which would be required to show for how much Greene & Barker were responsible when they assigned to John Innes Clarke. It was certainly admissible, for these purposes, because Greene & Barker were in truth co-partners with Carrington, and because, if they were not, it is a case of warranty and indemnity; and in such case, a judgment against the person to be indemnified, if fairly obtained, especially if obtained on notice to the warrantor, is admissible in a suit against him on his contract of indemnity. Whether it was admissible against John Innes Clarke, depends on the degree of his liability for the money for which that judgment was rendered. If the obligation to indemnify passed to him with the interest of Greene & Barker, either on his express undertaking contained in his letter of March 1801, or in consequence of any equitable lien on the vessel and cargo or on the money produced by them, which attached, while the property of Greene & Barker, and was not affected by the assignment, then these proceedings were admissible in a suit against him.

If no such liability existed, then the action could not be sustained, and the judgment would be reversed on the charge of the judge. This point therefore will be considered in that part of the case.

In his charge, after summing up the testimony offered by both parties, the judge proceeds to say, "I conceive that Mr. Clarke's letter bearing date March 16th, 1801, at Providence, and directed to Mr. Carrington at Havanna, and received by him the 22d of April, 1801, taken in connexion with the other evidence in the case, ought to be considered as a letter of guaranty, and binding Mr Clarke to pay 5-9th parts of the debt due to George Smith & Co. as ascertained by the judgment in their favor against Mr. Carrington. I am also of opinion, that Mr. Clarke having received of Mr. Carrington, a large sum of money under and by virtue of the assignment from Greene & Barker, of their inte-

rest in the ship Abigail and cargo, was bound under the circumstances of this case, as made out and established by the evidence, to refund the same, or so much thereof as would amount to 5-9th parts of the debt due to George Smith & Co. What sum Mr. Clarke received, is a question of fact, proper for you to decide."

The declaration in this cause contains five general counts, and three special counts founded on the letter of March 16th, 1801, which the judge considered as a letter of guaranty binding John Innes Clarke to pay 5-9th parts of the debt due to George Smith & Co.

The first part of the charge is supposed, by a part of the Court, to apply to the special counts, and to determine the right of the Plaintiff below to recover under them; the latter part of the charge, to the general counts, and to determine his right to recover under them.

If the letter of the 16th of March, 1801, bound John Innes Clarke to perform the contract of Greene & Barker, then he was liable to the extent of Greene and Barker's liability, and was bound to pay whatever they were bound to pay, although it might exceed the proceeds of the Abigail and cargo.

If that letter did not support the special counts, if with the other circumstances of the case it did not amount to such a contract as was stated in the declaration, then Carrington could only recover on his general counts, and could obtain a judgment for no more than had been received by Clarke.

Others of the Court are of opinion, that the charge does not import that, in any state of the accounts, Clarke was bound to pay more than he had received.

A decision of this point is rendered unnecessary by the opinion of the Court on the letter of the 16th of March, 1801.

The important part of that letter is in these words. "With respect to the ship, notwithstanding I have a "bill of sale from Greene & Barker of two thirds, I

CLARK'S
EX'RS.
*v.*
CARRING-
TON.

"shall view you, (if you return here with her,) as the
"owner of such proportion as agreed upon between
"you and them, and I give you my word that you shall
"receive from me any aid and support in settling the
"business to mutual satisfaction, that is in my power.
"Mr. John Corlis, who has undertaken to conduct the
"business for Mr. John C. Nightingale writes you by
"this opportunity, and will assure you in his behalf, of
"one sixth of one third from him, that is to say, to make
"you an owner in the whole ship Abigail, and appurte-
"nances of one complete sixth, and the same propor-
"tion in the cargo ; *and Greene & Barker's contract with*
"*you, shall in every respect be fully complied with, the*
"*same as it would have been done with them, had they*
"*continued owners.*"

What was Greene & Barker's contract with Carring-
ton ?

It is observable, that neither in this letter, nor in any
other part of the proceedings, is there any evidence that
Greene & Barker had made with Carrington more than
one contract respecting this voyage.

A part of this contract, as is apparent from the let-
ter of Mr. Clarke, entitled Carrington to one sixth
part of the Abigail and of the cargo to be taken on
board at Hamburg. The letter of the 12th of July,
1800, addressed by Greene & Barker to George Smith
& Co. states Carrington to be a part owner of the vessel
which was sent to Hamburg on freight, wishes them to
render Carrington the necessary aid he may require,
and adds, "we shall consider ourselves responsible for
all contracts Mr. Carrington may make in the busi-
ness of this ship, and anticipate the pleasure of your be-
ing well satisfied with his strict fulfilment of them."

It seems a necessary inference from the condition and
object of the parties, that this letter was written in pur-
suance of, and conformity with, the contract between
Greene & Barker and Carrington, and that their respon-
sibility, "for all contracts Mr. Carrington might make
in the business of the ship," was as much a part of their
engagement with him, as the agreement that he should
be interested one sixth in the vessel and cargo.

This undertaking was known to Mr. Clarke. His letter of the 30th of June, 1800, introducing Carrington to George Smith & Co. recommends Greene & Barker and Nightingale as the persons on whom G. Smith & Co. were to rely for the fulfilment of the engagements made by Carrington. "I have ever found these gentlemen," says he, " persons of strict integrity, and I doubt not will punctually fulfil any engagements they may enter into with you." Clarke knew then, that Greene & Barker had bound themselves to be responsible for the contracts of Carrington with George Smith & Co. and alluded to this residue of their contract with Carrington, when, after saying that he should consider Carrington as the owner of such proportion of the ship as was agreed on between him and them and that Mr. Corlis, who represented Nightingale, would do the same, he adds " and Greene & Barker's contract with you shall *in every respect* be complied with."

The subsequent conduct of Clarke certainly proves that he never understood himself to be entitled to more, by the assignment of the Abigail and her cargo, than would remain after discharging the contracts entered into by Carrington.

The record abounds with proofs of this position, which have been much pressed at the bar, of which the Court will select only one. It is the letter from Carrington to Clarke, dated Havanna, April 22d, 1801, in which he acknowledges the receipt of Clarkes letter of the 16th of March of the same year. He states the lien upon the ship and cargo, and adds, " but I presume, and doubt not, Messrs. Greene & Barker have acquainted you with the exact situation of them, and have only disposed to you that part of the ship and cargo that may remain after the bottomry bond is settled and discharged."

At this information Mr. Clarke expresses no surprise, nor does he manifest any dissatisfaction at the conclusion Carrington had drawn respecting the terms on which he had succeeded to the rights of Greene & Barker. This is considered as further explaining his meaning in using the terms, " and Greene & Barker's contract with you shall in every respect be complied with."

CLARK'S
EX'RS.
v.
CARRING-
TON.

Upon these grounds, it is the opinion of the majority of the Court, that the letter of the 16th of March, 1801, contains a contract, binding John Innes Clarke to perform the whole contract of Greene & Barker with Carrington, a part of which was to pay five ninth parts of the debt contracted on account of the Abigail and her cargo, with George Smith & Co; consequently the Plaintiffs in error were responsible to Carrington as far as Greene & Barker were responsible.

It has been contended, for the Plaintiffs in error, that a considerable part of the debt to George Smith & Co. (the premium of insurance on a return voyage to Hamburg,) was incurred in consequence of the gross negligence of Carrington in not countermanding the order for insurance as soon as he determined to change the voyage. For this sum it is contended, Greene & Barker could not have been liable to Carrington, and consequently it cannot be recovered from John Innes Clarke.

One of the judges is of opinion, that the question of negligence is, in this case, a point of law, Carrington having been a co-partner with Greene &, Barker, and therefore proper for the decision of the Court; others think that the judge has left that question with the jury.

In summing up the evidence, the judge says, "the Defendants say, that for his, (Carrington's) neglect in not giving such timely notice (of the change of the voyage,) he ought himself to pay the whole of the premium. Of this you will judge."

This explicit declaration, is considered as not being overruled by the concluding part of the charge.

If the fact of negligence was left to the jury, they have decided it in the negative, and the question whether a partner would in such a case be responsible to his co-partners for negligence in failing to countermand an order for insurance, does not arise in the cause.

On that part of the charge which states John Innes Clarke to be responsible to Carrington to the amount of the money he had received, there is no difference of

opinion in the Court. It is however, unnecessary to state the reasoning on which this opinion is founded, since the construction given to the letter of the 16th of March, 1801, decides the cause.

CLARK'S
EX'RS.
*v.*
CARRING-
TON.

It is the opinion of the Court, that there is no error, and *that the judgment be affirmed.*