Wardlaw, J.,
dissenting. I cannot bring my mind to the conclusion which my brethren have attained, and I feel constrained to offer the reasons of my dissent. Judge Thompson, in 1814, conveyed to Middleton, with covenant of general warranty; in 1820, Middleton, with like covenant, conveyed to Earle; in 1831, the heirs of Earle brought an action of trespass to try titles against Gen. Thompson, claiming in their declaration, a tract described by boundaries, with the number of acres left blank; the plea was the general issue, with notice of title in the defendant, and in another; and upon the trial of that action, in 1834, or afterwards, the verdict was, “We find for the defendant the land within the lines A. B. C.\D., as marked on the annexed plat of resurvey.” The lines referred to contain 131 acres, which is admitted to be part of the land contained in the two conveyances before mentioned. The heirs of Earle sued Middleton on his covenant, and in their declaration alleged his covenant as a covenant of seisen, as a covenant of power to convey in fee, as a covenant of freedom from incumbrance, as a covenant for quiet enjoyment, and as a covenant of general warranty; and assign as a special breach, that the action aforesaid was brought against Gen. Thompson; that Middleton had due notice of the said action, and was required to prosecute it; that he did not prosecute, or aid the plaintiff’ in doing so; that on the trial, Gen. Thompson proved the parcel of 131 acres to be his freehold, and that by the judgment of the court, the plaintiffs were evicted of the said parcel, by the said Gen. Thompson, he having, under Lehre grant (the date of which is not mentioned,) “ a prior and better title than the plaintiffs.” Middleton pleaded, that at the time of his covenant, Gen. Thompson had not lawful title to the said parcel; issue was joined, and verdict had for the heirs of Earle, the plaintiffs. Middleton then brought the present action, and on the trial, the only evidence produced was the records of the two suits already mentioned, and proof *73 that the present defendant, (Judge Thompson,) who was not vouched in the first of those suits, had, in Greenville, explicit notice of the second, two months before its trial in Charleston, and gave no aid in the defence, nor was present at the trial. Beyond this there was no evidence at all as to any title in Gen. Thompson, as to the occurrences at either of the former trials, or as to the proof upon which the plaintiffs failed in the first case, or that by which they succeeded in the second. Of the pleadings in the present suit, this court is not exactly informed; but all inquiry as to the different covenants which are contained in one general warranty, and as to the time when the cause of action arises on each, and the manner in which the breach of each must be assigned, is saved by the understanding that the plaintiff has averred a breach by eviction under title paramount, and that the burthen of proving it is on him. The reasonableness of the voucher, or notice, seems to have been decided as a question of law by the presiding Judge, and without enquiring whether there was, under the circumstances, that sufficient time for preparation which a dictum, in Davis vs. Wilbourne, 1 Hill, 29, thinks might be sufficient, I am of opinion that this is one of those instances of reasonable time in which the question of law was dependant on the question of fact, where no established rule could lead to a conclusion before the fact was found. 1 Stark. Ev. 423. But supposing this matter to be concluded by the verdict, I purpose to inquire: 1. Whether the record in the case of heirs of Earle against Gen. Thompson, was admissible to shew eviction by title paramount. 2. Whether that record was immaterial; and 3. Whether, independent of it, the record in the case of Earle vs. Middleton, with proof of defendant’s voucher in that case, was sufficient prima facie evidence for the plaintiff.
1. In many cases, where a record of judgment is not proof of the truth of the matters recorded, it is evidence of its own existence, and of the legal consequences thence deducible. Hence, in cases of indemnity, the judgment shewing a recovery against the indemnified, has been admitted as evidence of his loss, both as to the extent and as to his legal liability; but notice to the person bound to indemnify, is usually referred to, as strengthening the evidence in *74 competency was well as effect. See Duffield vs. Scott, 3 Term Rep. 374; Clark vs. Carrington, 7 Cranch, 322; Kip vs. Brigham, 6 Johns. 158; 7 John. 170. By analogy to such cases, and in imitation of the voucher under the ancient warranty, the modern practice of giving notice to one who is bound in a covenant running with the land, seems to have grown up, and to have been gradually extended to all cases of covenants to warrant either land or personalty, and to all cases where recovery over will be sought by one who has been sued, in the event of recovery against him. The cases on the subject are mostly American, because of the much more frequent occasion for the practice in this country. The principal cases I have consulted, to some of which I will hereafter refer, are Bender vs. Fromberger, 4 Dall. 436, note; Leather vs. Pultney, 4 Bin. 352; Hamilton vs. Cutts, 4 Mass. 352; Blasdale vs. Babcock, 1 Johns. R. 517; Waldo vs. Long, 7 Johns. 174; Sanders vs. Hamilton, 2 Hay, 226, 282 — and in our own State, Goodwyn vs. Taylor, 2 Brev. 171: Whitmore vs. Casey, 2 Brev. 424; Bond ads. Ward, 1 N. & M’C. 201; Davis vs. Wilbourne, 1 Hill, 29; and the MS. case of Allen vs. Roundtree, Columbia, May Term, 1832, book 5, p. 393. To give the vendee the advantage of the warrantor’s information about the title, and to save as well the trouble and expense of two trials of the same matter, as the confusion and injustice which would result from conflicting verdicts on the same evidence, the recovery against the vendee is admitted as evidence for him in.his action against the vendor with warranty, if the vendor had reasonable notice of the suit, and the validity of the title conveyed by him was tried; more especially if the vendor assisted in the defence. The failure of the warrantor’s efforts to defend the suit, is evidence of a breach of his undertaking to warrant and defend the title conveyed by him, as perhaps is his neglect of notice to defend. According to our own decisions, by the proper notice the warrantor has been made privy to the suit, and is concluded by a judgment for the plaintiff, from disputing what such judgment ascertains — that the plaintiff had a title better than the defendant’s; and this judgment, with proof of the notice to the warrantor, and proof that (as said in Davis vs. Wilbourne,) his title was in issue, *75 will be conclusive that the plaintiff’s title was better than the one which was warranted. But without proof of the warrantor’s title being in issue, the judgment against his vendee only raises a presumption of the breach of his warranty, strong, if the suit against the vendee was commenced soon after the warranty and was actually defended by the warrantor, and weak, in proportion as either of these circumstances is wanting.
In the MS. case of Allen vs. Roundtree, the suit against the vendee was commenced “ soon” after the warranty; certainly within five months. The vendor “had notice, conducted the defence, employed counsel, subpoenaed witnesses, and was present at the trial.” The presiding Judge held the record conclusive as to the title. But the Court of Appeals held that although the warrantor was made a privy, he was concluded only as to what appeared on the record. That it did not appear but that the recovery might have been by a title derived from the vendee himself, and therefore, notwithstanding that a strong presumption arose against the warrantor, upon which a verdict might have been found, that he was not concluded. The case of Sanders vs. Hamilton was quoted, shewing that the record is evidence of the “fact of eviction,” and of damages, but not of title ; and a new trial was ordered. Without notice of the suit to the warrantor, the record of recovery against his vendee is not admissible to shew that the plaintiff had better title than his vendee : Goodwyn vs. Taylor : — but without such notice, such record may be admitted to shew that there was such a judgment, and thereby to establish a legal conveyance, or the amount of the costs which were sustained by the vendee, and which, upon proof aliunde of an incumbrance, or other breach, the vendee may be entitled to recover, as in Waldo vs. Long. If then, Earle had been Judge Thompson’s vendee, and General Thompson, instead of being defendant, had sued Earle and recovered the 131 acres, the recovery without notice to Judge T. would have been evidence simply of its having taken place, but not of title in Gen. T. better than E’s. And even with notice to Judge T., besides the recovery, E., in an action against Judge T. must have shewn that Judge T’s. title was in issue in the former suit — a fact which, if the first suit had been *76 commenced soon after the conveyance, the jury might have presumed, from evidence that Judge T. attended the trial and defended the suit, but which, in case of a long interval between the conveyance and the first suit, and entire neglect of the notice, could hardly have been presumed. But with such recovery of Gen.T. as plaintiff, and the intermediate conveyance of Middleton, how would the record of Gen. T. vs. E. stand in a suit of M. vs. Judge T.? If Judge T. had received notice of the first suit, the record of Gen. T’s. recovery would probably have been admissible in the case supposed, in like manner as if no intermediate conveyance had taken place; (although my research has discovered no case of such recovery against a second vendee being produced in an action by the first vendee against his vendor :) but without the notice, why would such record have been admissible against Judge T. to any greater extent than it would have been against any other stranger to it'? The principle upon which a judgment in such cases is admitted, as proof of what the record establishes against those called privies, is that they have had an opportunity of defending themselves against it. Within this principle, the defendant in this case was not shewn to come. The circumstance that his vendee had notice, seems to be unimportant as to him. Indeed, of notice to Middleton, no other proof was given than that such notice is averred in the declaration of E. vs. M.; but possibly that averment may be untrue, and by either collusion or neglect, have been improperly admitted on, the trial against M., or may have been wholly immaterial. .But even proof of notice to M. would not have made the first suit less a transaction of which Judge T. might say that he should not be bound, because he had no notice. It thus seems to me that even if the first case had been a regular recovery by Gen. T. vs. E., the record of it would have been, in the case before us, inadmissible against'Judge T., as evidence of title paramount in Gen. T. But it was not a recovery by Gen. T. It was simply a failure by the heirs of Earle to recover against him; and the difference I think inaterial. For aught that appears, that failure may have been because the plaintiffs could not prove a trespass, or were negligent in producing or protecting their title. No such failure in ejectment, *77 independent of our statutes, would be evidence of title in the defendant. In a case involving title, a recovery by the plaintiff, when it is admisible evidence, is proof that he had title; for without title, he could not have recovered ; but a failure by plaintiff is no proof that he had not title, unless it be accompanied by evidence that the trial of title was had, and upon that question the judgment rendered against him. If here, it should have been considered, that the failure of the Earles, in the first case, with proof that they did not renew their action within two years, as required by our statute, and the peculiar finding of the jury, (without which they might under some circumstances have been barred of the whole land) furnished evidence that the title was found for the defendant; and that M’s. acquiescence, in the lapse of two years, without a second action, was, after establishment of the notice to him, sufficient to charge him, as if the heirs of Earle had been evicted ; then the question as to Middleton’s liability would have been, what did that eviction prove % It proved what the record would, in this view of it, have shewn-: that in 1831, Gen. T. had a title better than E’s. How far, from that fact, could have been presumed the more important fact, that Gen. T’s. title was better than that conveyed by M., in 1820, would have depended upon the evidence which the connexion in time between the warranty and first suit, and M’s. interference with that suit, furnished that M’s. title, and not E’s. had been in issue. But this, as to M., is the same inquiry which, under.my third head, I purpose to make as to judge T. I close the first inquiry with the distinct expression of the opinion I have endeavored to maintain, that as a recovery had and enforced by Gen. T. would, without notice, have been admissible against the defendant, only as evidence of the “fact of eviction,” but not of title paramount; so under like circumstances, a failure to recover against Gen. T., unaccompanied by any explanation of the failure, is not even evidence that his title ever was better than Earle’s.
2. Was the record of the first suit immaterial'? It was admitted to shew a title paramount, and the weight which the jury gave to it, we cannot estimate. If therefore it was a question of fact, whether a title better than that convey *78 ed by defendant existed, and that question depended upon presumptions which time and the conduct of the defendant, as before explained, afforded, it seems unsafe to regard as immaterial any evidence improperly admitted to the fact to be presumed, which in its character was so imposing and likely to affect a jury, as a solemn record. If then I have been right in the 1st inquiry, I think a new trial should be ordered, that the defendant may be relieved from the disadvantage of inadmissible evidence, admitted to the important fact of the case.
3. But rejecting the record of the first case, was the record of the second, with proof of the defendant’s having-been vouched in it, sufficient prima facie, evidence for plaintiff % By this second record, the fact of M’s. having been vouched in the first, is established against him, however the truth may be; and by the establishment of that fact, and proof that title was tried in the first case, and that M. acquiesced, M. was concluded from- denying that Gen. T. had a better title than Earle; but Judge T. being no privy to the first case, was not concluded from such denial. To admit the record of E. vs. M. then, as evidence of its contents, is to affect a party by a judgment bad upon evidence that would not have been admissible against such party. In this view, the case before us is like the case of Whitmore’s executors vs. Casey’s administrators, 2 Brev. 422, in which it was held that in a third case, a defendant who had been vouched in the second, should not be affected by the second verdict, because it was obtained by reason of the verdict in the first case, wherein he had not been youched. No opportunity to controvert the facts had been afforded to him, and the first verdi ct, says the court, cannot be adduced either directly or indirectly to operate against him. If however the second record were admissible under the circumstances, what does it establish 'l What the judgment contains — that M’s. covenant was broken, and that the plaintiffs had thereby sustained damages, The declaration, as before stated, in its allegation of breach recites the proceedings in the first case, and if the plaintiff in the case must be presumed to have proved, as was alleged, and therefore this defendant is a privy, to be concluded as to the recitals in the declaration, the whole amounts only to *79 this, that of parcel of the same land, conveyed by this defendant to M. in 1814, a title existed in Gen. T. in 1831, which was better than the title conveyed by M. in 1820. This is not even an allegation that the title to Gen. T. was better than that conveyed by defendant in 1814. Non constat that it did not arise by M's. own conveyance in 1815, or by the statute of limitations between 1814 and 1820.
The plaintiff in covenant must prove his breach strictly as laid. In 2 Wm’s. Saund. 181, note 10, Wolton vs. Stile, it is said, “The plaintiff should state in his declaration, in some manner, that the person evicting had a lawful title, before or at the time of the date of the grant to the plaintiff; and an averment that he had a lawful title, without this qualification, is too general, and bad after verdict; for it will be intended that the title of the person evicting is derived from the plaintiff himself: 1 Show, 70, Skinner vs. Kilbys." If the whole matter contained in the record, which is the only proof in this case, would, if alleged, have been bad even after verdict, it seems insufficient to put the defendant to proof. I would call the evidence offered, not prima facie, but imperfect; conclusive so far as it goes, but short of the mark. In Leather vs. Pultney, where the warranty was special, it was not contended by any one that a recovery against the vendee, with distinct proof of the warrantor’s aiding to defend the suit, could raise a presumption against him, without evidence that the recovery was had by a title derived from him. By evidence aliunde, that Gen. T. had a paramount title, or that recovery was had in either of the former cases by proof of such title, or by evidence of a grant or deed seeming to shew such title, and bearing date before 1814, along with the second record, under the view which the court has taken of that record, the burden of proof should have been transferred to the defendant; but I cannot perceive that, as the case stood, without any such evidence, the breach of defendant’s covenant was at all shewn.