### WILHITE v. HOUSTON et al.

#### (Circuit Court of Appeals, Eighth Circuit. October 28, 1912.)

#### No. 3,719.

1. BROKERS (§ 6*)—RELATION TO CLIENT—ACTS.

Where defendant employed plaintiffs to purchase and sell grain for him on commission at various exchanges, plaintiffs having no interest in the purchases and sales other than as defendant's brokers, their relation was not affected by the fact that in executing defendant's orders plaintiffs assumed the position of principals toward those with whom they dealt.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 4; Dec. Dig. § 6.*]

2. BROKERS (§ 21*)—EMPLOYMENT—PURCHASE AND SALE OF GRAIN—EXCHANGES.

An order from a customer to a broker, to be executed on a board of trade, contemplates conformity to the rules and customs that prevail there.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 17; Dec. Dig. § 21.*]

3. GAMING (§ 2*)—PURCHASE AND SALE OF GRAIN—EXCHANGES—WHAT LAW GOVERNS.

Where orders for purchases and sales on exchanges were made through brokers, the legality of the transactions was governed by the law of the state where the exchange was located.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 2; Dec. Dig. § 2.*]

4. GAMING (§ 12*)—PURCHASES AND SALES OF COMMODITIES FOR FUTURE DELIVERY.

In Illinois a contract of purchase or sale of a commodity for future delivery is void only when both parties intended it as a wager on the market movements, to be settled by payment of differences, while in Missouri the contract is void by statute if either party so intended.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. § 22; Dec. Dig. § 12.*

Sales and purchases under agreements for settlement of differences between contract price and market price, as wagering contracts, see note to Ware v. Pearsons, 98 C. C. A. 368.]

5. GAMING (§ 49*)—PURCHASE AND SALE OF GRAIN—FUTURE DELIVERY.

The mere fact that no grain was actually delivered or received pursuant to purchases and sales thereof, but that the sales and purchases were set off against others according to the custom of exchanges, did not show that the transactions were illegal.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 100–102; Dec. Dig. § 49.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. GAMING (§ 49*)—GAMBLING TRANSACTION—PURCHASE AND SALE OF GRAIN—ILLEGALITY—BURDEN OF PROOF.

Where contracts for the purchase and sale of grain on exchanges were fair on their face and presumptively lawful, regardless of the undisclosed intention of the defendant, the burden was on defendant to prove that the transactions were mere wagers on the fluctuations of the market.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 100–102; Dec. Dig. § 49.*]

7. APPEAL AND ERROR (§ 1050*)—ADMISSION OF EVIDENCE—PREJUDICE.

The admission of incompetent evidence is not prejudicial, where it added nothing of moment to the evidence already introduced on the same subject.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

In Error to the Circuit Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action by William R. Houston and another against Ola Wilhite. Judgment for plaintiffs, and defendant brings error. Affirmed.

J. P. O'Meara, of Bartlesville, Okl., and W. H. Kornegay, of Vinita. Okl., for plaintiff in error.

Lathrop, Morrow, Fox & Moore and Thomas H. Reynolds, all of Kansas City, Mo., and B. B. Foster, of Bartlesville, Okl., for defendants in error.

Before SANBORN, HOOK, and SMITH, Circuit Judges.

HOOK, Circuit Judge. Wilhite complains of a judgment which Houston and Fible obtained against him on an account for disbursements and commissions on sales and purchases of grain. His defense, or rather the only one material here, was that the transactions out of which the account arose were gambling transactions; that is to say, that it was not intended the grain dealt in should be delivered or received, but that the ventures were mere wagers on the fluctuations of the market, to be settled according to the differences between contract and market prices. Most of the defendant's assignments of error relate to the refusal of the trial court to direct a verdict in his favor, the refusal of instructions asked, and the charge given by the court to the jury. It is not necessary to recite them in detail. They can be disposed of by referring to facts which were either uncontroverted or settled by the verdict in favor of the plaintiffs and to certain principles of law which we think are well established.

[1, 2] The plaintiffs, who are brokers at Kansas City, Mo., ac' ¹ almost entirely upon telegrams and letters from the defendant and his agent. According to the instructions given them the orders for sales and purchases of the grain were executed on the boards of trade at Kansas City and Chicago. The character of such exchanges, their legitimate relation to the business world, and their operations are described in Board of Trade v. Christie Grain & Stock Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031, where some of the aspects of the case at bar which counsel deem sinister find adequate explanation.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The plaintiffs had no interest in the sales and purchases they were directed to make, other than as defendant's brokers; and this relation, as between them, was not affected by the fact that in executing defendant's orders the plaintiffs assumed the position of principals toward those they dealt with. Clews v. Jamieson, 182 U. S. 461, 481, 21 Sup. Ct. 845, 45 L. Ed. 1183. An order from a customer to a broker, to be executed upon a board of trade, contemplates conformity to the rules and customs which prevail there. Bibb v. Allen, 149 U. S. 481, 489, 13 Sup. Ct. 950, 37 L. Ed. 819. The rules of the boards of trade at Kansas City and Chicago prohibited gambling transactions.

[3-5] As regards their legality the sales and purchases of grain in the Chicago market were governed by the law of Illinois; those in the Kansas City market, by the law of Missouri. Berry v. Chase, 77 C. C. A. 161, 146 Fed. 625; Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 61 S. W. 617. In Illinois a contract of sale or purchase of a commodity for future delivery is void if both parties intended it as a wager upon the market movements to be settled by differences, but not if only one of them has that intention. That is the general rule in the absence of statute. In Missouri the contract is declared void by statute if either party so intends, though the other does not. Cleage v. Laidley, 79 C. C. A. 284, 149 Fed. 346. Nothing appeared in the correspondence of the parties or their conferences before the controversy arose to indicate that the transactions were not intended to be legitimate. The mere fact that no grain was actually delivered or received, but that the sales and purchases were set off against others according to the custom of exchanges, did not show they were illegal. Cleage v. Laidley, supra.

[6] The contracts were therefore fair on their face and presumptively lawful, whatever may have been the undisclosed intention of defendant. In this situation the law is that, when defendant asserted they were wagers upon the fluctuations of the market, the burden was on him to prove it. Clews v. Jamieson, supra, 182 U. S. 491, 21 Sup. Ct. 845, 45 L. Ed. 1183. The foregoing are the principles which control the case, and the trial court explained them to the jury fully and in detail. So far as the instructions requested by defendant stated the law correctly, they were either given or embodied in the general charge. We have examined the exceptions to the charge, and do not think any of them well taken. Whether both parties or either of them intended to wager or gamble was fairly submitted to the jury, the jury found against the defendant on the issue, and there was substantial evidence to support the finding.

[7] But one other question requires notice. The day before the dealings shown on the account were finally closed the defendant went to Kansas City and conferred with one of the plaintiffs and their manager, who had been advised of his coming by a telegram from the agent who had acted for him in giving orders. After the conversation plaintiffs wrote the agent saying:

"With reference to Mr. Wilhite, we beg to state that he called [on] us late this afternoon and made arrangements for the protection of his account."

This letter was offered in evidence as part of the plaintiffs' case in chief, but was then excluded. Afterwards the court reversed its ruling. when plaintiffs' evidence in rebuttal was being received, and admitted the letter over defendant's objection. Ordinarily letters forming a part of a course of correspondence between parties about their business transactions are admissible in an action involving the transactions. Clark v. Carrington, 7 Cranch, 308, 321, 3 L. Ed. 354. But even if the one here was not admissible, it was unimportant. It added nothing of moment to the evidence which had already been received on the subject. Testimony had been given on behalf of both parties at the proper and regular stages of the trial as to the conference at Kansas City, what was said and agreed to, and what was not said and agreed to. Each party had given his version in detail, and the clause of the letter quoted was no more than an indefinite reiteration of the position of the plaintiffs, which the defendant had expressly denied.

We have exercised our discretion to pass over serious objections to defendant's assignments of error, and have given consideration to those which we think merit it.

The judgment is affirmed.