## PARISH VS. GEAR.

1. EFFECT OF ANSWER IN EQUITY.—An answer in chancery, directly denying the matters charged in the bill, as within the knowledge of the defendant, will prevail against the bill, unless the answer is contradicted by two witnesses, or by one witness and corroborating circumstances.

2. SAME.—If the defendant sets up new matter in his answer, not responsive to any of the charges in the bill, it must be supported by testimony *aliunde*, or it cannot avail him in his defense.

3. SAME.—If the defendant discredits his own answer by contradictory, unreasonable or irreconcilable statements, or by statements contradicted by written instruments on the same point, or by positive denials of charges of which he could have no personal knowledge, then the testimony of one disinterested witness will sustain the bill against the answer.

APPEAL from the District Court for *Iowa* County.

*Parish* filed a bill in equity against *Gear* in the Iowa district court, alleging:

That in April, 1836, *Gear* called on him for a settlement of his account, and produced his books, which showed an indebtedness on the part of *Parish* of $3,700, and it was agreed that *Parish* should secure this sum by a mortgage on sundry tracts of land in Iowa county, payable in four months. After this was agreed upon, *Gear* stated that there were some other demands for brick and freights that were not taken into the account, which amounted to about $300, making in the whole about $4,000, which would be the full sum of *Parish's* indebtedness. By agreement of the parties, a bond and mortgage were executed by *Parish* to secure the sum of $4,200, which *Gear* admitted would cover all contingencies; payable in four months. When the mortgage became due, William S. Hamilton paid for *Parish* the amount thereof, and $84 for interest, making in all $4,284, and took *Gear's* receipt; and that since that period no dealings whatever have been had between the parties.

After this, in October, 1837, *Gear* sent to *Parish* an additional demand of $1,562.38, as a balance of accounts, for which he demanded payment, and on which he brought suit in the Iowa county district court, still holding said bond and mortgage, and refusing either to deliver them up or release the property, although they had been fully paid and discharged. *Parish* always denied the justice of the additional claim or balance demanded of him, but having sold a part of the land included in the mortgage to which he was anxious to make a good title, which he could not do while *Gear* held an outstanding mortgage which he would not release, and being pressed, he finally consented to confess judgment for the amount of the claim in suit, which he did, with the express agreement with *Gear's* attorney that the bond and mortgage should be given up, and all mistakes in the account corrected, and a stay of execution on the judgment was agreed upon and entered.

After the stay had expired, *Gear* pressed *Parish* with an execution and was about to sell his property, and still held the bond and mortgage as a security for the judgment and refused to deliver them up.

The bill charged that the judgment was fraudulently obtained and that it was unjust; that the debt was included in the mortgage which had been paid, and prayed for a perpetual injunction against the judgment, and a decree that the bond and mortgage should be delivered up and canceled.

The answer of *Gear* admits the execution of the mortgage, the payment of the money by Hamilton and the receipt, but denies a settlement of accounts or that the mortgage was for the whole debt due him at the time, and states that *Parish* then owed him about $5,700. He states that the mortgage was given to secure the sum of $4,200, and such other sums as *Parish* owed him; that the mortgage was not acknowledged or recorded, and that the mortgage and bond were mislaid and could not be found; admits that the money ($4,200) was paid to him by Hamilton, August 1, 1836, but denies that said sum was paid or received as payment of the mortgage, and states that on the contrary, there was still due from *Parish* over $1,500; denies that he refused to deliver up the mortgage; admits that J. P. Hoge, his attorney, called on *Parish* for the balance due of $1,562.38, and that *Parish* confessed judgment for that sum, but denies that the judgment was obtained by any fraud of either Hoge or himself; is informed and believes that Hoge agreed with *Parish* that the mortgage should be delivered up and canceled, and he has been ready and willing that it should be done, but told Hoge that he thought the mortgage ought not to be given up until the money was paid; denies that the agreement with Hoge was the consideration that induced *Parish* to confess the judgment, but says that the only inducement was because the debt was just,

He states that on or about the 1st of February, 1839, he agreed to execute a deed of release for the mortgaged premises to *Parish,* and thereupon *Parish's* attorney drew a deed which he executed, and about the same time *Parish* paid him $250; denies all fraud, etc.

The mortgage mentioned in the bill and answer, and the bond, were produced by *Gear* on the trial in the district court; the bond was for $5,000, conditioned for the payment of $4,200, which was the amount of the mortgage. The mortgage was to secure that sum alone, and nothing further, and was acknowledged before and certified by a notary public, but not recorded.

The only depositions taken in the cause, and read upon the trial, were those of William S. Hamilton and John Turney. The deposition of Hamilton proved: That in the spring of the year 1836, he was present at the closing up of the business of complainant and defendant, which was done at his suggestion, at which time *Gear* presented to *Parish* his book, showing *Parish's* indebtedness to be about $3,700, but *Gear* alleged that there were other charges for freight on furnace irons, brick, and perhaps some other small matters, and the parties agreed that the witness should draw a mortgage to secure the debt, *Gear* stating that the addition of $300 would cover all claims against Parish not mentioned in the books. The mortgage was drawn and executed by *Parish* to *Gear* for the sum of $4,200, which was considered by all parties as sufficient to cover all claims from *Parish* by *Gear.* On the 1st August, 1836, witness paid to *Gear,* for *Parish,* $4,284 and asked *Gear* for the mortgage, which he declined giving up, stating that the sum paid did not cover the account of *Parish.* At the time when the mortgage was given, it was supposed that it would cover the whole amount due from *Parish* to *Gear,* but it was agreed that the balance that might be found to be due from either party should be adjusted.

The deposition of Turney proved: That after *Gear* had sued *Parish,* he, *Parish,* consulted the witness upon

the expediency of confessing judgment, and expressed great anxiety to get his property unincumbered for the purpose of making good conveyances : that he, the witness, had a conversation with J. P. Hoge, attorney for *Gear*, in which said Hoge pledged himself that the mortgage should be given up and canceled, and any error in the accounts between the parties should be corrected. That the sole object of *Parish* in confessing judgment was to get the mortgage returned, and upon the promises of Hoge he advised *Parish* to confess judgment.

The district court decreed a perpetual injunction of the judgment at law, from which decree *Gear* appealed.

*Moses M. Strong*, for appellant :

From the facts in this case, the district court ought not to have gone further than to cancel the mortgage, and the injunction against the judgment at law ought to have been dissolved. The answer of the defendant denies all the equity of the bill. According to all rules of chancery practice, the answer cannot be defeated unless it is contradicted by two witnesses, or by one witness and strong corroborating circumstances. There is no part of the bill to which more than one witness testifies, and there are no corroborating circumstances to make the testimony preponderate over the answer. The statements in the answer as to the settlement of the accounts and execution of the mortgage are not even contradicted by one witness, and the answer on this point must prevail.

The defendant is called upon by the complainant to answer under oath. The complainant makes him his witness in the cause ; and although he may, as in other cases, prove by other witnesses that the facts are different from what the defendant has stated them to be, yet he cannot discredit his testimony, because he is his witness.

The withholding the mortgage by *Gear* (and that is sufficiently explained in the answer), could be no sufficient cause for enjoining the judgment. It had never been recorded, and was no lien upon the land, and could

not produce any of the difficulties which *Parish* seemed to fear.

The complainant has not shown himself entitled to any relief as to the judgment; but if the court can, upon the facts of the case, interfere with the judgment, the most that it can do will be to vacate it, and permit the parties again to litigate their rights in a court of law, and this will be stretching the matter to the utmost verge of authority.

*T. P. Burnett* and *F. J. Dunn,* for appellee:

Too much consequence seems to be given to the answer of a defendant in chancery. Although, as a general principle, the rule is admitted as it has been stated, yet it is not without exceptions. If the defendant states in his answer any matters that are not in response to the bill, it cannot avail him, but must be supported by testimony *aliunde.* If the defendant makes contradictory or unreasonable statements, or answers positively in relation to facts not within his own knowledge, and which he could not possibly know with certainty, or if his statements are contradicted by written documents which cannot be doubted, the court will consider these circumstances as detracting from the weight of the answer, and the court may, if the facts warrant it, consider the answer as entirely discredited. This principle is fully established in the following cases: *Hart v. Teneyck,* 2 Johns. Ch. 62, and the authorities collected in note (*a*) at page 90; *Mitchell v. Maussin,* 3 Monr. 185; *Whittington v. Roberts,* 4 id. 173; *Young v. Hopkins,* 6 id. 18; *Paynes v. Coles,* 1 Munf. 373. In applying these principles to this case, it will be found that the appellant has in his answer denied positively the circumstances and reasons and the conditions for confessing the judgment, as charged in the bill, when he could not possibly know any thing about it except from information. He states that the mortgage was never acknowledged or recorded, and yet the document itself, which had always been in his possession, shows that it was acknowledged

and certified at the time when it was executed. That part of the answer in relation to the execution of the mortgage is so unreasonable in itself, and so contrary to the course of business with all merchants of any discretion or prudence, that it is out of the pale of belief. He does not deny any of the material allegations of the bill upon that subject, except those in relation to the purposes for which the mortgage was given and the amount of the account, which he says was at that time about $5,700, and that the mortgage was given to secure the sum of $4,200, and such other sums as *Parish* owed him. The mortgage and bond both show for themselves that $4,200 is all that could be collected upon them, and that they were given for nothing else. The facts in the transaction which cannot be doubted show that at the time, *Parish* was willing to give a mortgage for the whole sum which he justly owed, and that in this spirit the mortgage was raised from $3,700 to $4,200. What discreet business man is there who, under such circumstances, seeking security for his debts, when he had an opportunity of getting it, would leave out so large an amount as $1,500 and upward? There is none ; and the statement is too unreasonable to obtain belief.

It is said that the mortgage, not being recorded was no lien on the land, and that the failure or refusal to cancel it was no disadvantage to *Parish*. Although not recorded, it was acknowledged and certified, and could be placed upon record any minute, as much to the prejudice of *Parish* as if it had been recorded in the first instance.

The material allegations of the bill are sufficiently supported by the depositions and documentary evidence ; and an important circumstance in the case which the court will not overlook is, in all this contest *Gear* has never produced his books or attempted to show, in any way whatever, how or why this enormous excess was not taken into the account when the mortgage was given, nor

stated his account to show that the whole sum claimed was justly due.

DUNN, C. J.      This is an appeal from a decree of the district court of Iowa county, sitting as a court of chancery.

A bill of complaint was exhibited in said court by the appellee, *Parish*, against the appellant, *Gear*, setting up that the said *Gear*, by his attorney, had fraudulently obtained on the law side of said court, a confession of judgment against him, by false promises and representations, for the sum of $1,562.58, on an account, or the balance of an account, which had been settled with, and secured to said *Gear* by a bond and mortgage executed to him by *Parish* in April, 1836, more than a year before the confession, and that he has had no dealings with *Gear* since, and he calls on him to answer if he has; which mortgage was discharged and paid off by *Parish* to *Gear* about four months after date, being the time the money secured by said mortgage became due, when said *Gear*, on demand, refused to give up said mortgage as he should have done.

That in October, 1837, to obtain said confession, Joseph P. Hoge, attorney for *Gear*, promised said *Parish*, if he would confess judgment for the said $1,562.58, the balance of the account claimed, that *Gear* would immediately surrender the mortgage to be canceled; and that owing to the peculiar situation of him, the said *Parish*, at the time, in relation to some of the mortgaged lands, he having sold the same and received a part of the purchase money, and being bound to make conveyance, did consent to confess judgment as aforesaid, not admitting that any balance was due *Gear*, but influenced solely by the great desire he had to secure that to which in law and equity he was justly entitled, the surrender to him of the mortgage, that he might convey, as he was bound to do, by good and sufficient deeds or conveyances. That said *Gear* falsely, fraudulently and improperly refused to

deliver up said mortgage in pursuance of said promise so made by his attorney, and insisted on by *Parish* in good faith; and the bill concludes with a prayer for an injunction against said judgment at law, and that upon the final hearing, the said court of chancery may decree a perpetual injunction against said judgment at law, or decree to said *Gear* so much as upon proper proof may be justly due to him, or such other relief as to equity may appertain.

The defendant *Gear* in his answer denies that their full accounts were settled in 1836, and a mortgage given to secure $4,200 only, as the entire amount due him at the time, and alleges that it was not only given to secure said $4,200, but such other sum as might be due from *Parish* to him, and that he has found since said mortgage was given, that said *Parish* owed him $5,700. That the mortgage was given but never acknowledged and recorded; that the $4,200 were paid to him by *Parish's* agent, which he applied to the credit of *Parish's* account. He denies that said $4,200 was received in full satisfaction of said mortgage or of the debt due by *Parish* to him, but that there was a balance then due of more than $1,500. He admits that his attorney, Joseph P. Hoge, Esq., called on *Parish* in October, 1837, for a balance of $1,562.58, and that *Parish* confessed judgment for that sum at the time set forth; but denies that it was in any wise obtained by fraud, either on his part or on the part of his attorney, Joseph P. Hoge, Esq., but was the free and voluntary act of *Parish*. He admits that he is informed and believes that his attorney consented that said mortgage should be surrendered up to be canceled, and avers that he has ever been ready and willing, although he told his said attorney that he did not think the mortgage should be surrendered until the debt was paid, and that he has never since been able to find said mortgage. He denies that the agreement with his said attorney, Hoge, was the consideration that induced *Parish* to confess judgment, but insists that it was because he

believed the debt to be an honest debt, and that a stay of execution for six months was agreed on.

The defendant then set up new matter, not responsive to any of the charges in the bill.

Upon this bill and answer and replication, the mortgage and bond of *Parish* to pay the $4,200, receipt of payment by *Parish*, and the depositions of Turney and Hamilton, taken on the part of complainant *Parish*, this cause came on to be heard, and upon hearing, the court decreed a perpetual injunction against the judgment at law in favor of said *Gear* against said *Parish*.

It becomes the duty of this court to review the cause, and affirm or reverse the decree of the district court.

The principle so long recognized in equity proceedings, that fraud in their procurement will taint and destroy the obligatory effect of all parol contracts, deeds and even judgments, is too well established to admit of discussion upon the soundness of the doctrine at this day. The primary object of the complainant's bill in this cause, is to avoid the effect of the judgment at law against him, by showing fraud in its procurement. A court of equity is the only place where he can be relieved. There is not, apparent on the record of the confession of the judgment at law, any error in law ; if there were, confession takes away error. The doors of the courts of law are barred against him, on account of the rigid and inflexible rules which govern in cases at law. The charge of fraud in this case gives jurisdiction to the court of equity, and when parties are properly in this court, it may decree finally on all the matters connected with the subject-matter of the fraud charged. This, then, presents a case for the relief prayed for, secondly for the surrender and cancellation of the mortgage, and *Gear's* right to recover for a balance on an account settled and closed by the bond and mortgage. We must test the truth of the allegations of complainant's bill by the evidence in the case, and this consists of the defendant's answer to the matters charged in the bill, as of his own knowledge, the written

instruments filed in the cause, and the depositions taken and read below.

The defendant's direct answer, as of his own knowledge, is proper evidence, and must be weighed and considered and will prevail, unless contradicted by two witnesses, or one with corroborating circumstances. If a defendant sets up new matter, not in answer to any of the charges in the bill, it must be supported by testimony *aliunde*, or it cannot avail him in his defense, but may prejudice, from the appearance it bears, of an attempt to equivocate, by leading off from the gist of the matters he should answer. If it appears from the answer of a defendant, that he discredits his answer by contradictory, unreasonable, irreconcilable statements, or by statements contradicted by written instruments on the same point, or by positive denials of charges of which he could have no personal knowledge, then the testimony of one disinterested witness will preponderate over the weight of the testimony contained in his answer, and against the answer. These principles are recognized in *Mitchell v. Maussin*, 3 Monr. 185 ; *Whitington v. Roberts*, 4 id. 173 ; *Young v. Hopkins*, 6 id. 18 ; *Paynes v. Cole*, 1 Munf. 373 ; *Hart v. Teneyck and others*, 1 Johns. Ch. 62, and authorities referred to in note (*a*) page 90. Under these rules a majority of this court have considered the defendant's answer herein which is all the evidence in his favor in the cause, and have opposed thereto the depositions of Turney and Hamilton, disinterested witnesses, and the mortgage and bond referred to, produced by the defendant at the hearing, and the receipt of payment, and are of opinion that the charges of the complainant in his bill, are sustained by proofs preponderating over the answer of the defendant, which does appear to us to be discredied upon its face in part, and by written instruments in other respects, leaving the complainant's charges unimpaired, undenied and supported by the testimony. The defendant, as the whole matter was before the court of equity, had ample time and opportunity to introduce proofs to sustain the

justice of his account, and show that the items claimed were omitted by mistake or otherwise, at the settlement of 1836, when the bond and mortgage were given to secure the payment of the matters of account then claimed and stated to be due to defendant by complainant; but he slept and introduced no testimony whatever. Therefore, on a review of the whole cause, we are of opinion that the decree of the district court herein be affirmed with costs.

MILLER, J. (*dissenting.*) When I cannot agree with my brethren, I feel it incumbent upon me, particularly in cases so important as this, to give the reasons for my dissent.

It seems from the evidence that there had been running accounts between these parties for some time, and that *Parish* became indebted to *Gear* for various matters, including liabilities to a large amount. In May, 1836, the parties, according the deposition of William S. Hamilton, met to close up their business, and a mortgage was given by *Parish* to *Gear* for $4,200, the amount then supposed to be claimed and due. The witness states that at the time the mortgage was given, it was supposed that the amount specified in the mortgage would cover the debt, but that the balance, whatever it might be, whether in *Parish* or *Gear's* favor, was to be settled as just and correct. From the tenor of the deposition, I understand the mortgage to have been given as a security for whatever might be due. The witness says that *Gear's* books were there, but from the facts respecting the manner in which the sum was stated, and the understanding respecting whatever balance there might be, it requires no stretch of imagination to perceive that there may have been liabilities on other transactions not recollected at the time. The mortgage was payable in four months, and was paid when due, and *Parish* received, and produced on the trial his receipt for the $4,200. The mortgage was never recorded but was kept by *Gear*, who resides in Illinois. It does not appear that the paper was ever in

Wisconsin, until it was produced at the trial by *Gear* for cancellation; and he avers that he would have given it over to *Parish*, but that he could not find it. In October, 1837, the claim of *Gear* against *Parish* was put into the hands of Mr. Hoge, a lawyer of Galena, for collection. This claim, deducting the credit of the mortgage, and the amount of $4,200 paid thereon, left a balance of upward of $1,500 due to *Gear*, to which he swears in his bill; for the recovery of which suit was instituted in the district court of Iowa county against *Parish*, and after consulting counsel he voluntarily confessed judgment thereon for the balance claimed. The defendant rested satisfied with this judgment against him until September following, when he filed his bill for an injunction against it, alleging fraud. He alleges that he gave the judgment for the purpose of procuring from *Gear*, the mortgage, and that Mr. Hoge promised to have the mortgage surrendered to him. The only proof of this is by the declarations or acknowledgments of Mr. Hoge that he did say so, and this is proved by the counsel of *Parish*, whom he had consulted before he confessed the judgment. If there was any thing in this it was competent to have Mr. Hoge testify; he was a competent witness, and his declarations were not the best evidence. But there is nothing in it to found a decree upon enjoining this judgment. For before the judgment was confessed, the whole account was presented to *Parish*, on which he consulted counsel; he then came into court and acknowledged it to be correct by his confession of judgment. Why should *Parish* confess a judgment for upwards of $1,500, and thereby create a lien on his lands, for the purpose of getting into his possession a mortgage that was never recorded, and merely in the possession of a man in Illinois, and for which he held a full and entire release and discharge? It is too preposterous to admit of serious consideration. And if there is any fraud proved in obtaining this judgment on the part of *Gear* or Hoge, I cannot see it.

All the pointed allegations in the bill are fully and positively denied by the defendant *Gear*, and all the testimony in the case was the deposition of Hamilton relating to the settlement, and the deposition of Turney, who was the attorney of *Parish*, and consulted by him before he confessed the judgment, who proves what *Parish* said to him, and the above acknowledgment of Hoge. This was not evidence under any circumstances, and should not be considered. If such testimony were allowed, a client and his attorney can make as much evidence as may be necessary to gain any cause. In addition to this, what took place between client and counsel respecting a cause, as in this case, should not be received as evidence. Graham's Practice, 39. Mr. Hoge could have been examined, and consequently his acknowledgment was not, in the first place, the best evidence. But it was as to the surrender of the mortgage only, not as to the legality or honesty of the consideration of the judgment. But there is nothing in this, as at the trial the mortgage was in court to be canceled, and the defendant had a receipt in full for its amount.

Even if Hamilton's testimony was conclusive, and left no doubt or uncertainty as to the real balance between the parties, there is but the testimony of one witness to the transaction, which is not sufficient, unless accompanied with strong corroborating circumstances. 9 Cranch, 153. The corroborating circumstances relied upon are the bond and mortgage, and these cannot be used as a substitute for another *witness*, when the balance, by agreement, was to be afterward settled, and for that balance a judgment was confessed upon consultation and professional advice. In the case of *The Marine Insurance Company v. Hodgson*, 7 Cranch, 322, which was a bill to enjoin a judgment on the ground of a misrepresentation of the age and tonnage of the vessel, whereby the underwriters were induced to agree to a high valuation, and were thereby defrauded, MARSHALL, C. J., says, without attempting to draw any precise line to which courts of

equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said, that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence of himself or agent, will justify an appeal to a court of chancery.

A defense cannot be set up in equity, which has been fully and fairly tried at law, although it may be the opinion of that court that the defense ought to have been sustained at law. The equity of the applicant must be free from doubt. And the court there decided, that as the party was not prevented from making his defense at law, by any act of the plaintiff, or by any positive rule which disabled him from doing so, a clear case was not made out for the interposition of a court of chancery, and the injunction was denied. Such should have been the decision in this case, for that was stronger than this. Here the mortgage was given upon an understanding that whatever balance should appear on either side should be afterward settled ; the settlement, too, whatever it was, was only proven by one witness, the mortgage was paid and receipted, and never recorded ; the balance afterward presented and demanded, and sued for, when it was probably filed with the declaration, and after consultation with counsel, a judgment was confessed for it, which remained nearly one year before any application was made to disturb it, and then on a pretense of the non-surrender of the paid mortgage, which was in court at the trial for cancellation. The party could have had all these matters investigated at law, he was not prevented in any way, and then the accounts between the parties could have been fully settled. This, in my opinion, does not present any such case as requires the extraordinary decree of a perpetual injunction.

If the court was fully satisfied that the accounts should be examined, possibly the judgment might have been opened, or an issue directed, to try and investigate the same.  Such a practice has been pursued.  2 Wash. C. C. 433 ; 14 Serg. & R. 137.  Relief might be obtained in a proper case on a writ of error *coram nobis*.  1 Rawle, 323.  This is the most the party could ask, and it is very doubtful whether, under all circumstances, the court should even go thus far, but certainly no farther.

NOTE.—The appellant, *Gear*, appealed from the foregoing decision to the supreme court of the United States, whereupon the decree of the supreme and district courts of Wisconsin was reversed, and the bill was ordered to be dismissed. *Gear v. Parish*, 5 How. 168.