90 N.J. Super. 565 (1966)
218 A.2d 655
JOSEPH WHITE, PLAINTIFF,
v.
MERRILL, LYNCH, PIERCE, FENNER & SMITH, INC., DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 18, 1966.
*566 Mr. Thomas M. Venino for plaintiff (Messrs. Venino & Venino, attorneys; Mr. Fredric W. Altschul, on the brief).
Mr. Theodore L. Abeles for defendant (Messrs. Lum, Biunno & Tompkins, attorneys).
SCHNEIDER, J.C.C. (temporarily assigned).
This is a suit against a stockbroker to recover monies paid for bonds which proved to of questionable value. On February 26, 1963 Joseph White placed an order with his stockbroker, defendant Merrill, Lynch, Pierce, Fenner & Smith, for 670 convertible subordinated debentures of the Continental Vending Machine Corporation. These securities were listed on the American Stock Exchange. The debentures had a face value of $10,000 and a due date of September 1, 1976. The negotiated price *567 for the debentures was $5,530. The order was filled the same day. Defendant secured the debentures from two other brokerage houses. On the next day, February 27, 1963, the American Stock Exchange suspended trading in the securities of Continental Vending. On March 4, 1963 the ten debentures were tendered to Mr. White and he paid for them, together with a $25 commission fee. It was later ascertained that the prior owner of the debentures was Harold Roth, president of Continental Vending.
A Chapter X proceeding against Continental Vending was filed in the Eastern District of New York, and involuntary bankruptcy was adjudicated on July 12, 1963. However, this proceeding did not render the debentures valueless. On oral argument counsel was unable to state the present or future worth of these debentures. Pursuant to action by the Securities and Exchange Commission, trading of these securities remains suspended down to the present date.
Plaintiff requested an opinion from Continental Vending and was informed the debentures were valid. He filed proof of claim in the bankruptcy court and there has never been any ruling affecting the validity of the bonds.
The facts are not in dispute. Plaintiff does not suggest that defendant knew of Continental Vending's precarious financial condition. Neither is it contended that defendant fraudulently misrepresented Continental Vending's financial condition or that defendant failed to convey good title. Plaintiff admits that the debentures were not purchased upon defendant's recommendation.
Plaintiff contends that defendant was acting as his agent, and that agents are under a fiduciary duty to their principals. The day after the order was placed a "red flag" went up; trading in the debentures was suspended. Defendant, he says, was then under a duty to put its principal's interests before its own and rescind the transaction on the ground that the value of the debentures was now grossly impaired. Only defendant could rescind, and it was under a fiduciary duty to protect its principal
*568 Defendant contends that plaintiff entered into a unilateral contract with his stockbroker; if the broker delivered ten debentures he would pay $5,530. Upon delivery the broker was entitled to the money, and was in fact paid. Secondly, it is undisputed that plaintiff frequently bought and sold debentures. In so doing he implicitly accepted the practice and custom of the trade. The accepted rule of the stock market is that barring fraud or misrepresentation, orders are final once they are placed and filled. Thirdly, the broker argues that any other rule would make the broker a guarantor and insurer of future events. This would necessitate a higher commission rate and greatly complicate the transaction of business  orders would no longer be final until delivery of the stock. Finally, under the rules of the Exchange, defendant could not simply "rescind" an order which was filled the previous day. Arbitration between the buying and selling brokers would be necessary.
It is beyond dispute that plaintiff is a purchaser of negotiable securities and has acquired the protected status of a holder in due course. N.J.S. 12A:3-302; Morgan v. United States, 113 U.S. 476, 5 S.Ct. 588, 28 L.Ed. 1044 (1884). The broker has thus complied with his contractual obligation of conveying good title to the buyer.
The question before the court, then, is whether defendant was under a legal duty to cancel the order of February 26 upon learning the next day that trading was suspended by the Exchange.
Courts are reluctant to disturb the matrix of rules and practices which form the underpinning for the conduct of business in the commercial community. Traditionally, an effort was made by the courts to accommodate equitable principles of law with commercial practices. In keeping with this tradition, the concept of a holder in due course was developed to increase the negotiability of securities.
"The very purpose of rules making certificates negotiable when endorsed in blank is to enable all persons to treat possession of the certificates *569 as equivalent to ownership." Mason v. Public National Bank, 262 App. Div. 249, 28 N.Y.S.2d 416, 424 (App. Div. 1941).
Where brokers have not acted fraudulently, the courts have sought to protect their status.
"* * * it would seem clear that no liability should be imposed on agents or brokers acting innocently in such cases. The bonds, being negotiable, pass by delivery, and the transferee to whom they are sold, who takes them for value and in good faith, obtains a good title as against the real owner." First National Bank of Blairstown v. Goldberg, 340 Pa. 337, 17 A.2d 377, 380 (Sup. Ct. 1941)
In the early case of Steward and Metler v. Scudder, 24 N.J.L. 96 (Sup. Ct. 1853), the court recognized that the general custom and usage of the market place were valid aids in construing a contract between a grain merchant and a broker. It was stated that the court would recognize "those general customs which form so important a part of the common law and the general custom of merchants" where such customs and practices were "reasonable and adapted to increase trade and promote fair dealing." Ibid., at p. 106. See also Manhattan Overseas Co. v. Camden Co. Bev. Co., 125 N.J.L. 239, 244 (Sup. Ct. 1940).
The holding in Hawkins v. Merrill, Lynch, Pierce, Fenner & Beane, 85 F. Supp. 104, 121 (D.W.D. Ark. 1949), is indicative of the view taken by those courts which have considered the problem: customers are bound by the rules of the stock exchange "even though they did not have actual knowledge of them." 50 Am. Jur. § 22, p. 642; see also Annotation 79 A.L.R. 592.
However, where a customer has no actual or constructive knowledge that his agent will trade on a certain market, the Supreme Court has held that he will not be bound by the rules of that market where such rules work a substantial and material change in his rights. Irwin v. Williar, 110 U.S. 499, 4 S.Ct. 160, 28 L.Ed. 225 (1883).
The courts of New York have been in accord with the above views.
*570 "The general rule is that where a customer gives an order to a broker to be executed on a board of trade or exchange, he contemplates conformity to the rules and customs that prevail there (Wilhite v. Houston, 200 Fed. 390, 118 C.C.A. 542), and if he knows that the broker is a member of a particular exchange and is bound by its rules adopted to facilitate business, he may be bound by the rules although not fully informed concerning them (Springs v. James, 137 App. Div. 110, 121 N.Y. Supp. 1054, affirmed 202 N.Y. 603, 96 N.E. 1131)." Ford v. Snook, 205 App. Div. 194, 199 N.Y.S. 630 (App. Div. 1923), affirmed 240 N.Y. 624, 148 N.E. 732 (Ct. App. 1925).
The New York courts have gone so far as to say that "* * * a person who instructs a broker to carry out a certain transaction which would necessarily, or even ordinarily, involve its being carried out on a certain exchange, is bound by the rules of that exchange." Hyman v. Sachs, 194 Misc. 69, 86 N.Y.S.2d 237, 239 (Sup. Ct. 1948), affirmed 275 App. Div. 804, 89 N.Y.S.2d 608 (App. Div. 1949), affirmed 300 N.Y. 499, 89 N.E.2d 20 (Ct. App. 1949).
Plaintiff in the case chose to trade on the American Stock Exchange. Admittedly, the practices of any exchange are not entirely satisfactory. Exigencies of time and finality to transactions prevent the system from being perfect. Under the law, by choosing to trade on the Exchange plaintiff was in effect subjecting himself to its practices. If the practices and rules of the Exchange prevented defendant from cancelling the order placed the previous day, plaintiff cannot now be heard to complain unless these practices are so repugnant to common principles of equity and fair dealing as to compel the court to redress his grievances. Ordinarily, the court will not lightly interfere with so complex yet workable, a system as a stock exchange. Therefore, assuming that under the circumstances of this case the rules of the Exchange would prevent cancellation, plaintiff is bound by such rules.
Per contra, if under the rules of the Exchange it was incumbent upon defendant to cancel the transaction, plaintiff would have a proper cause of action. But there has been no adequate showing by plaintiff to this effect.
For these reasons judgment will be entered for the defendants.